FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 11, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TIFFANY B.,[1] | No.  1:25-cv-3174-EFS |
| Plaintiff, | |
| v. | **ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS** |
| FRANK BISIGNANO, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Tiffany B. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 2 and Title 16 benefits because the ALJ erred when evaluating the medical opinions. The ALJ so erred,

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." See LCivR 5.2(c).

DISPOSITIVE ORDER - 1

and this error affected the crafted residual functional capacity. Therefore, this matter is remanded for further proceedings, including a new physical consultative examination.

## I.    Background

Plaintiff filed applications for benefits, alleging disability beginning December 7, 2021, due to several conditions, including Ehlers-Danlos syndrome, small fiber autonomic neuropathy, dysautonomia, dysphagia, and chronic pain syndrome.[2] In November 2024, Plaintiff appeared for a hearing before ALJ Kathryn Preston.[3] Plaintiff, who was then 33-years-old, testified that she experiences chronic pain throughout her body, including her neck, back, shoulders, hips, legs, and arms, along with burning and tingling sensations, and at times numbness, in her hands and legs.[4] She stated that she experiences tremors and hand spasms when engaging in repetitive hand activities, she has heart palpitations or fainting episodes, her

---

[2] Administrative Record (AR) 207–33, 271.

[3] AR 36–59.

[4] AR 46, 53.

DISPOSITIVE ORDER - 2

pain limits her ability to stand to about 5 minutes at a time, and she must change positions often.[5] She testified that due to pain she has decreased cognitive abilities, requiring her to write down instructions.[6] She stated that she is no longer taking medications, as none of the medications helped reduce her pain by more than 20 percent, and so the medication side effects were not worth taking the medication.[7] She stated that, at the suggestion of her physical therapist, she uses a three-point cane with a folding seat, which allows her to sit and rest when she is walking.[8] She stated that she can drive and that she lives with her mother, who helps her shower.[9]

On function reports, Plaintiff likewise reported pain when sitting, standing, or lifting; difficulties showering by herself due to fatigue, weakness, and shoulder pains; the need to set reminders on her phone

---

[5] AR 46.

[6] AR 46.

[7] AR 46–47.

[8] AR 47–48.

[9] AR 45–50.

DISPOSITIVE ORDER - 3

to remember to do things; and difficulty with following spoken instructions.[10] She listed that she has uses walking sticks and bracing for her hands, knees, elbows, ankles, feet, and neck.[11]

After the hearing, the ALJ issued a decision finding Plaintiff not disabled.[12] The ALJ found Plaintiff's alleged symptoms were "not entirely consistent with the medical evidence and other evidence."[13] As to the medical opinions, the ALJ found:

- the prior administrative medical findings of the state agency medical consultants, Ken Murphy, MD, and Thomas Davenport, MD, persuasive except for their opinion that

---

[10] AR 288–89, 292, 307–08, 309–10.

[11] AR 293.

[12] AR 14–35. Per 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[13] AR 24. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should consider replacing the phrase "not entirely consistent" with "inconsistent." 53 F.4th 489, 499, n.2 (9th Cir. 2022).

DISPOSITIVE ORDER - 4

Plaintiff be limited to 4 hours of standing/walking in a workday.

- the prior administrative medical findings of the state agency psychological consultants, Elizaeth Cucolo, PsyD, and Susan South, PsyD, "somewhat persuasive."

- The examining physical consultative examination of Shari Engstrom, MD, "somewhat persuasive."

- The treating physical opinion of Amy Madison, MD, not persuasive.[14]

As to the sequential disability analysis, the ALJ found:

- Plaintiff meets the insured status requirements through December 31, 2026.

- Step one: Plaintiff had not engaged in substantial gainful activity since December 17, 2021, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder, chronic pain

---

[14] AR 26–28.

DISPOSITIVE ORDER - 5

syndrome, Ehlers-Danlos syndrome, migraine, chronic fatigue syndrome, lumbar degenerative disc disease, lumbar radiculopathy, autonomic neuropathy, cervical degenerative disc disease, obesity, and postural orthostatic tachycardia syndrome.

• Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

• RFC: Plaintiff had the RFC to perform a range of light work and:

> [T]he claimant is able to lift up to 20 pounds occasionally and lift/carry up to ten pounds frequently. She is able to stand/walk for about six hours and sit for up to six hours in an eight-hour workday, with normal breaks. She is unable to climb ladders/ropes/scaffolds, but is occasionally able to climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. She is unable to tolerate exposure to unprotected heights and use of dangerous moving machinery. She is able to perform simple, routine, and repetitive tasks in a work environment free of production-rate pace requirements, involving only simple work-related decisions and routine workplace changes. She is able to engage in frequent bilateral handling and fingering.

• Step four: Plaintiff is unable to perform past relevant work.

DISPOSITIVE ORDER - 6

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as office helper, marker, and electronics worker.[15]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[16] Plaintiff now appeals to district court.[17]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error"[18] and such error impacted the nondisability determination.[19] Substantial evidence is

---

[15] AR 17–30.

[16] AR 1–6.

[17] ECF No. 1.

[18] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[19] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may

DISPOSITIVE ORDER - 7

"more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[20]

### III.  Analysis

Plaintiff argues the ALJ made conclusory findings that are not supported by substantial evidence when discounting the medical opinions of Dr. Madison and Dr. Engstrom. In response, the Commissioner argues that, when her entire decision is considered, the

---

not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[20] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

ALJ's reasoning is sufficiently articulated and supported by substantial evidence.

**A.    Medical Opinions: Plaintiff establishes consequential errors.[21]**

As is explained below, when evaluating whether Dr. Madison's and Dr. Engstrom's opinions were supported by and consistent with the record, the ALJ relied too heavily on the normal objective findings in the medical records, mischaracterized Plaintiff's treatment as limited, and relied too heavily on activities that are not inconsistent with the opined limitations.

---

[21] Plaintiff's medical-opinion arguments focus solely on the physical-health opinions; therefore, the Court focuses on those opinions and not the mental-health opinions. *See Nadon v. Bisignano*, 145 F.4th 1133, 1138 (9th Cir. 2025) (deciding that the claimant forfeited an argument by not challenging the ALJ's findings in that regard).

DISPOSITIVE ORDER - 9

1.    Standard

An ALJ must consider and evaluate the persuasiveness of all medical opinions and prior administrative medical findings.[22] The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[23] As to the supportability and consistency factors the ALJ is required to explain how they were considered.[24]

2.    Physical-Health Medical Opinions

a.    *Dr. Madison*

Rheumatologist Dr. Madison treated Plaintiff seven times before preparing her medical opinion in June 2022.[25] She diagnosed Plaintiff with joint pain in an unspecified joint; Ehlers-Danlos syndrome, unspecified; other intervertebral disc disorders, lumbar region;

---

[22] 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b).

[23] *Id.* §§ 404.1520c(b), (c)(1)–(5), 416.920c(b), (c)(1)–(5).

[24] *Id.* §§ 404.1520c(c), 416.920c(c)(1)–(2).

[25] AR 547–53.

DISPOSITIVE ORDER - 10

urticaria; and long-term (current) use of systemic steroids.[26] Dr. Madison determined that Plaintiff's prognosis was poor, that she was not a malingerer, and that her symptoms include joint pain, imbalance, fatigue, tingling/numbness, brain fog, and dizziness.[27] She opined that Plaintiff's health will deteriorate over time; that she will have substantial difficulty with stamina, pain, and fatigue if she works fulltime at light or sedentary levels of exertion; that she will need to work at a reduced pace if working a fulltime light or sedentary job; and that Plaintiff's pain, fatigue, and other symptoms would "very frequently" interfere with her attention and concentration.[28]  She also opined that Plaintiff's maximum ability to sit or stand and walk during an 8-hour workday was less than 2 hours, that she could sit for only 10 minutes before needing to change position, that she could stand for 5 minutes before needing to change position, that she would walk around

---

[26] AR 547. Dr. Madison used ICD Codes to list her diagnoses. *See* https://www.icd10data.com/ICD10CM/Codes (last viewed May 1, 2026).

[27] AR 547–49.

[28] AR 548–49.

for 5–10 minutes at a time; and that she needed to walk around every 10–15 minutes.[29] Dr. Madison recommended that Plaintiff be able to shift at will from sitting or standing/walking, and that she sometimes would need to lie down during the work day: stating "she lays down 20x per day, 15–60 minutes at a time."[30] She marked that Plaintiff should never twist or climb ladders, that she should rarely (0–5% of the work day) stoop, crouch, and climb stairs, that she should rarely lift even if less than 10 pounds, and never lift more than 10 pounds.[31] Dr. Madison also imposed environmental restrictions: restricting Plaintiff from extreme cold and heat and fumes, limiting Plaintiff to even moderate exposure to wetness and humidity, and limiting concentrated exposure to noise.[32] She estimated that Plaintiff would be absent more than 4 days per month.[33]

---

[29] AR 549–50.

[30] AR 550.

[31] AR 550–51.

[32] AR 551.

[33] AR 552.

DISPOSITIVE ORDER - 12

b.   *Dr. Engstrom*

In June 2023, Dr. Engstrom conducted a disability examination and reviewed provided medical records, including lumbar imaging revealing degenerative disc disease, particularly at L5-S1.[34] Dr. Engstrom noted that Plaintiff was wearing a lumbosacral support.[35] Plaintiff reported to Dr. Engstrom that she has chronic pain worsened by sitting or standing for extended periods, dysphagia, myalgia, Ehlers Danlos syndrome, and bowel spasms.[36] The physical examination was normal, except that Plaintiff was unable to hop on one foot bilaterally and her range of motion was limited in her neck (rotation, lateral, and extension), shoulders (bilateral abduction and flexion and right extension), and back (forward flexion).[37] Dr. Engstrom opined that in an 8-hour workday Plaintiff should be limited to 4 hours of sitting, 2 hours of standing, and 2 hours of walking; that she could

---

[34] AR 580–94, 807.

[35] AR 591.

[36] AR 583–84, 591.

[37] AR 588–90.

DISPOSITIVE ORDER - 13

lift at least 5 pounds frequently and 30 pounds occasionally; she could carry at least 5 pounds frequently and 10 pounds occasionally; and that she should be limited to occasional squatting and grasping, frequent reaching with her left upper extremity, and frequent bending, handling and feeling.[38]

### c.    *Prior Administrative Medical Findings*

Days after Dr. Engstrom's opinion, Dr. Murphy reviewed the record. Dr. Murphy found that Plaintiff is limited to 4 hours of standing and/or walking, 6 hours of sitting during an 8-hour workday, frequent lifting and/or carrying of 10 pounds, and occasional lifting and/or carrying of 20 pounds.[39] In April 2024, Dr. Davenport reviewed the record and agreed with Dr. Murphy's functional-limitation findings.[40]

---

[38] AR 591.

[39] AR 68–72.

[40] AR 93.

DISPOSITIVE ORDER - 14

### 3. The ALJ's Findings

The ALJ evaluated each of the physical-health medical opinions and prior administrative findings—and disagreed at least in part with each of them.

As to the prior administrative findings, the ALJ found them persuasive except for their finding that Plaintiff is limited to 4 hours of standing/walking because such was only partially supported by the consultants' summary and were inconsistent with the "generally unremarkable physical examinations despite limited/conservative treatment and greater functional abilities than alleged."[41]

The ALJ found Dr. Madison's opinion unpersuasive because it is "not supported by reports of the claimant's own functioning" and "inconsistent with the longitudinal objective evidence that shows generally unremarkable physical examinations despite limited treatment and greater functional abilities than alleged."[42]

---

[41] AR 27.

[42] *Id.*

As to Dr. Engstrom's opinion, the ALJ found her opinion only "somewhat persuasive" as the opinion was:

> Not consistent with the longitudinal objective evidence and is not supported by the examiner's own findings of normal gait, strength, range of motion, including normal grip strength. The opinion is partially consistent with the evidence of record and partially supported by the examiner's summary and analysis of the evidence . . . .[43]

The ALJ then crafted a light-work RFC, requiring Plaintiff to be able to both sit and stand/walk for 6 hours a day and engage in frequent bilateral handling and fingering.[44]

### 4. Analysis of the ALJ's findings

#### a. *Dr. Madison*

As a preliminary matter, Plaintiff does not challenge the ALJ's rejection of Dr. Madison's opinion that Plaintiff needs to lay down "20x per day, 15–60 minutes."[45] However, Plaintiff challenges the remainder of the ALJ's evaluation of Dr. Madison's opinion.

---

[43] AR 27.

[44] AR 23.

[45] ECF No. 9 at 10.

DISPOSITIVE ORDER - 16

First, Plaintiff challenges the ALJ's determination that Dr. Madison's opinion was not consistent with Plaintiff's reported functioning/activities. An ALJ may discount a medical opinion that is inconsistent with the claimant's level of activity.[46] Yet, the ALJ must consider that "many home activities are not easily transferable to what may be the more grueling environment of the workplace."[47] Here, when evaluating Plaintiff's activities, the ALJ focused too heavily on activities that are neither inconsistent with Dr. Madison's opinion nor supported by the record; moreover, the ALJ failed to identify which of Dr. Madison's opined functional limitation(s) were inconsistent with the listed activity.

---

[46] 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) (comparing the medical opinion with the evidence from nonmedical sources); *see Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

[47] *See Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) (determining that the claimant "could participate in some daily activities does not contradict the evidence of otherwise severe problems that she encountered in her daily life during the relevant period").

For example, the ALJ stated the record showed that Plaintiff was independent in her personal care, however, Plaintiff testified that her mom assists with showering, and Plaintiff likewise advised both the consultative psychological examiner and her physical therapist that she needs assistance when showering and that she uses a stool while showering.[48] Second, although the ALJ focused on that Plaintiff is able to "prepare meals, wash dishes, do laundry, . . . and shop in stores,"[49] the record reflects that Plaintiff makes simple meals like sandwiches or heating up soup and washes minimum dishes, does a load of laundry "here and there," and goes to a small grocery store "one to three times out of a month" where she uses her chair cane as needed to sit.[50] Furthermore, during physical therapy there was a focus on "practic[ing] functional movements of bending forward for daily tasks,

---

[48] AR 50, 573, 831, 833, 835.

[49] AR 27.

[50] AR 295–96, 323, 573, 1066. *See also* AR 478 (reflecting a triggering sinus-rhythm event after bending over a basket to grab laundry).

DISPOSITIVE ORDER - 18

such as preparing meals in the kitchen, dressing and bath."[51] Other physical therapy notes state that Plaintiff "continues with significant dysautonomia, decreased balance, and poor tolerance to activity."[52] Third, the ALJ failed to meaningfully explain how Plaintiff's ability to read articles and watch videos on her phone, watch television, manage finances, and meditate are inconsistent with Dr. Madison's opined limitations. Fourth, Plaintiff's out-of-state move was necessitated by that she resides with family and the move was precipitated by a family member's need to move.[53] Fifth, treatment records referencing Plaintiff's assistance with her nephew reflect that her care for her nephew was minimal as she was "unable to pick up and hold him" or "get down on the floor to play with him due to pain."[54]  And finally, although Plaintiff did have a larger, aging dog, this dog passed away in

---

[51] AR 1040, 1043, 1046, 1058.

[52] AR 833, 1052, 1066, 1087.

[53] AR 45, 573, 1078, 1095.

[54] AR 1087.

DISPOSITIVE ORDER - 19

February 2022, two months after the alleged disability onset date.[55] Regardless, treatment records reflect that Plaintiff's care for her dogs exacerbated her pain and symptoms and only demanded short periods of her attention.[56]

On this record, substantial evidence does not support the ALJ's finding that Dr. Madison's opined limitations are inconsistent with Plaintiff's activities.

In addition, when considering the consistency factor, the ALJ stated that "the longitudinal objective evidence . . . shows generally unremarkable physical examinations despite limited treatment . . . ."[57] As a threshold issue, Plaintiff argues the ALJ failed to cite to specific portions of the longitudinal objective evidence to support this inconsistency finding. The Commissioner responds that the ALJ's inconsistency finding is supported by the ALJ's evaluation of the

[55] AR 944.

[56] AR 48–49, 296–300, 523, 573, 678, 823, 824, 831, 851, 910, 931, 944, 951, 985.

[57] AR 27.

DISPOSITIVE ORDER - 20

longitudinal medical record in earlier parts of the ALJ's decision. The Commissioner is correct that the Court looks to the ALJ's entire decision to evaluate the basis for the ALJ's decision and findings. However, the ALJ's overall characterization of "the longitudinal objective evidence . . . [as showing] generally unremarkable physical examinations despite limited treatment . . . ." is not supported by substantial evidence as the ALJ failed to adequately consider the medical evidence reflecting abnormal observations and findings.[58]

For instance, during most of the relevant period, Plaintiff attended physical therapy at least twice a month.[59] During some of

---

[58] *Id.*

[59] When evaluating Plaintiff's symptom reports, the ALJ stated that Plaintiff missed numerous physical therapy appointments due to scheduling conflicts. However, the record reflects that during the relevant period Plaintiff typically attended physical therapy at least once a month, along with almost monthly osteopathic manipulative treatment appointments. *See* AR 25 (citing AR 831, which states Plaintiff "has not been to PT *for about a month* due to schedule

DISPOSITIVE ORDER - 21

these sessions, the physical therapist assisted Plaintiff with adjusting her shoulder and scapular positions with retraction/depression to aid in the "functional use of *walking pole*, elevation and reaching."[60] The ALJ, when reviewing Plaintiff's symptom reports, mentioned that the physical therapist did not prescribe or deem medically necessary the chair cane that Plaintiff uses.[61] Nonetheless, treating providers observed Plaintiff using a walking pole, and during osteopathic

conflicts. She arrives today in significant pain due to injuring her low back trying to help her ailing dog. She has been to multiple practitioners including her pain doctor for MIT and medications and a chiropractor . . . .") (emphasis added); (citing AR 1087, which is from January 24, 2024, and states that Plaintiff "has not been to PT for over a month [since December 4, 2023] due to scheduling conflicts and illnesses"). These treatment records do not support the ALJ's characterization of the record that Plaintiff did not follow through with treatment.

[60] AR 980, 983 (emphasis added).

[61] AR 25.

DISPOSITIVE ORDER - 22

manipulative treatment (OMT) appointments it was also noted that she had an abnormal gait and used a cane.[62] Furthermore, notwithstanding regular physical therapy and OMT, Plaintiff had yet to meet the physical therapy treatment goals of "walking more than 15 minutes without significant pain and fatigue or loss of lower extremity coordination," "tolerate standing/being on feet greater than 30 minutes without significant fatigue," and "sit comfortable greater than 30 minutes without feeling like she needs to move constantly due to pain and discomfort."[63] On this record, the ALJ's finding that Plaintiff "generally [had] unremarkable physical examinations" is not supported by substantial evidence.[64]

Plus, the ALJ did not discuss why Dr. Madison's opined limitations, particularly her standing/walking/sitting limits, the lifting/carrying limitations, and reaching limitations, were inconsistent with lumbar imaging revealing moderate levoconvex scoliosis apex at

---

[62] AR 667, 673, 678.

[63] AR 1088.

[64] *See, e.g.*, AR 659, 667, 674, 679, 693, 700, 765, 773.

DISPOSITIVE ORDER - 23

L3 with advanced L5-S1 disc degeneration with dorsal disc bulge and osteophytes.[65] Of note, the physician who read the MRI commented,

> There is slightly progressive vertebral endplate discogenic endplate changes *which may be a pain generator*. Additionally there is left greater than right subarticular zone stenosis from dorsal osteophyte and discs. Although there is continuity with the adjacent transiting S2 nerves no obvious mass effect. Moderate foraminal stenosis. . . . There is additional multilevel face arthropathy and only mild disc degeneration without canal, subarticular zone, or foraminal stenosis at the remaining levels.[66]

Furthermore, the ALJ failed to explain why Dr. Madison's opined limitations as to lifting/carrying and reaching were inconsistent with the longitudinal objective evidence, which reflects that physical therapy and OMT routinely focused on Plaintiff's upper back/neck, low back, and left shoulder, and her overhead reaching was limited due to pain and restricted range of motion.[67] In addition, during

---

[65] AR 807–08.

[66] AR 807 (emphasis added).

[67] *See, e.g.*, AR 909, 931 (demonstrating decreased cervical and bilateral shoulder range of motion); AR 853, 856, 859, 928, 939, 941, 947, 967,

Dr. Engstrom's examination, Plaintiff's neck, back, and shoulder range of motion was limited.[68]

The lumbar imaging and abnormal observations during Plaintiff's generally monthly physical therapy and OMT reveal that the ALJ's characterization of the physical examinations as being "generally unremarkable despite limited treatment" is not supported by substantial evidence.[69] In addition, the ALJ fails to cite to other treatment options recommended by treating providers, and the record reflects that Plaintiff underwent "extensive workup with rheumatology and neurology."[70]

---

973, 1090 (focusing manual therapy on cervical and bilateral shoulders).

[68] AR 588.

[69] *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (disallowing the ALJ from cherry picking evidence to support a conclusion that contradicts the overall diagnostic record).

[70] AR 729. *See also* AR 739, 753, 770, 784, 797, 827, 906.

DISPOSITIVE ORDER - 25

While an ALJ need not address every piece of evidence, an ALJ "may not ignore significant probative evidence that bears on the disability analysis."[71] And the ALJ must explain why the observations and findings in the summarized treatment notes and other aspects of the record are inconsistent with the opined limitations.[72] Moreover, "it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."[73]

### b.    *Dr. Engstrom*

The ALJ likewise erred when evaluating Dr. Engstrom's opinion. The ALJ's overall decision reflects that the ALJ "cherry picked" the

---

[71] *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022).

[72] *See Burnett v. Bowen*, 930 F.3d 731, 736 (7th Cir. 1987); *Humane Soc. of U.S. v. Locke*, 626 F.3d 1040, 1054 (9th Cir. 2010 (requiring an agency to provide an explanation that "enables meaningful judicial review").

[73] *Garcia v. Comm'r of Social Sec.*, 768 F.3d 925, 930 (9th Cir. 2014) (cleaned up); *Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984).

DISPOSITIVE ORDER - 26

normal observations, while downplaying the abnormal observations and the lumbar imaging, which Dr. Engstrom reviewed. In addition, the ALJ failed to recognize that Dr. Engstrom observed Plaintiff with restricted range of motion in her shoulders, back, and neck.[74] Furthermore, Plaintiff's cited activities are not inconsistent with Dr. Engstrom's opined limitations given that Plaintiff can do these activities at her own pace, and her out-of-state move was necessitated by her family-living situation.

The ALJ's errors when considering the consistency of and supportability for Dr. Engstrom's opinion—and Dr. Madison's opinion—resulted in an unsupported RFC.

**B.    Remand: further proceedings.**

Remand for further proceedings is needed for a proper disability determination.[75] On remand, a consultative physical examination is to be ordered, with the consultative examiner being given a copy of the

---

[74] AR 588–90.

[75] *See Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).

2022 lumbar imaging, any recent imaging, a longitudinal sampling of the physical therapy and OMT records, and the medical opinions from Dr. Madison and Dr. Engstrom.[76]

## IV.    Conclusion

Plaintiff established the ALJ erred. The ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary support—the sequential process.[77]

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

---

[76] *See* 20 C.F.R. §§ 404.1517, 416.917.

[77] *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (requiring the ALJ to identify the evidence supporting the found conflict to permit the court to meaningfully review the ALJ's finding).

2. The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 9 and 10**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 11th day of May 2026.

_____
EDWARD F. SHEA
Senior United States District Judge

DISPOSITIVE ORDER - 29